Hall *v.* Snowhill.

### PETER HALL v. ANDREW SNOWHILL.

A mortgage or gift, or bill of sale of chattels, whether accompanied with possession or not, is valid and effectual as between the parties, and against all persons, except creditors. The owner of a reversionary interest in chattels, may have an action on the case, for an injury to it.

## Hall v. Snowhill.

The mortgagee of personal property is considered the true owner, and has a right to the actual possession and control of it, in the event of the non-payment of the debt due to him from the mortgagor. An agreement between the parties, in reference to the temporary, or intermediate possession of the goods, does not alter the substantial rights of the mortgagee.

The defendant in error, after reversal of the judgment of the court below, will be permitted to amend the record by withdrawing the demurrer, and pleading de novo, but this will be permitted only, upon payment of the costs of the demurrer in the court below, and the costs on the writ of error.

Peter Hall brought an action of trespass on the case, in the Court of Common Pleas of the county of Middlesex, against Andrew Snowhill, sheriff of that county, and declared as follows:

Middlesex, ss.  Andrew Snowhill, sheriff of the county of Middlesex, was summoned to answer unto Peter Hall, of a plea of trespass on the case, &c. Whereupon the said Peter Hall, by W. H. Lupp, his attorney, complains, for that whereas, one George W. Hall, and one Charles C. Hall, being the owners and proprietors of divers goods and chattels, to wit: of a large quantity of goods, wares and merchandize hereinafter more particularly described, of great value, to wit, of the value of nine hundred dollars, and being largely indebted to the said Peter Hall, the plaintiff, to wit, in the sum of nine hundred dollars, did heretofore, to wit, on the twenty second day of March, in the year of our Lord, one thousand eight hundred and thirty or e, jointly and severally, make, execute and deliver to the said plaintiff, an indenture of mortgage, which said indenture, the said Peter Hall, now bringeth here into court, the date whereof is on the same day and year aforesaid, by which said indenture, the said George W. Hall and the said Charles C. Hall, for the securing the payment of the above mentioned sum of money, so as aforesaid due, and owing from them to the plaintiff, and in consideration of the sum of one dollar to them in hand paid, before the ensealing and delivery of the said indenture of mortgage, the receipt whereof was thereby acknowledged, did grant, bargain and sell, all the goods, wares and merchandize, household stuffs, and effects mentioned and expressed in a schedule, thereunto annexed; that is to say, two hundred and fifty yards of calico, six pieces of cloth, &c.—(enumerating a number

Hall *v.* Snowhill.

of other articles) the same then remaining and being in the house, situated in the town and township of Piscataway, county of Middlesex, and State of New Jersey, then in the occupation and possession of William N. Smith, to have and to hold all and singular the goods and chattels thereby granted, and sold unto the plaintiff, his executors, administrators and assigns forever, upon condition, that if the said George W. Hall, and Charles C. Hall, should pay or cause to be paid unto the plaintiff, his executors, administrators or assigns, the sum of nine hundred dollars, on or before the twenty-second day of March in the year of our Lord, one thousand eight hundred and thirty two, together with the lawful interest thereon, according to the laws of the State of New Jersey, payable annually, then that the said indenture and every thing therein contained should be void. And the said George W. Hall and the said Charles C. Hall, in and by the said indenture, for themselves, their executors, administrators and assigns, did covenant and agree to, and with the plaintiff, his executors, administrators and assigns, that in case default should be made in the payment as above mentioned, at the time limited as aforesaid, it should be lawful for the said plaintiff, his executors, administrators and assigns, with the aid and assistance of any person or persons, to enter into and upon the dwelling-house and premises aforesaid, and in such other place or places, as the said goods and chattels might be held, or placed, and take and carry away the said goods and chattels, and sell and dispose of the same, for the best price they could obtain, and out of the money to retain and pay the said sum above mentioned, and all charges touching the same, rendering the overplus, if any, unto the said George W. Hall, and the said Charles C. Hall, their executors, administrators and assigns, and until default in the payment as above specified, should be made, the said George W. Hall and Charles C. Hall, were, in and by the said indenture, to remain and continue in the quiet and peaceful possession of the said goods and chattels, and the full and free enjoyment of the same. In witness whereof the said George W. Hall and the said Charles C. Hall, on the day and year aforesaid, signed, sealed and delivered the said indenture of mortgage, by virtue whereof, the plaintiff became entitled to a reversionary interest and property in all and singular the

goods, wares and merchandize, household stuffs and effects particularly specified as aforesaid in the said schedule annexed as aforesaid, to the said indenture of mortgage—and herein before particularly mentioned. Yet the said Andrew Snowhill, sheriff as aforesaid, well knowing the premises, but contriving and wrongfully intending to injure, prejudice and aggrieve the said Peter Hall, the plaintiff, in his reversionary interest and property in the said goods and chattels, whilst the same were so in the possession of the said George W. Hall, and the said Charles C. Hall under and by virtue of the said indenture of mortgage, and whilst the said sum of money secured as aforesaid by the said indenture of mortgage remained unpaid, and unsatisfied, to wit, on the seventh day of April, in the year of our Lord one thousand eight hundred and thirty-one, at Piscataway, in the township of Piscataway, to wit, at New-Brunswick in the county aforesaid, wrongfully and unjustly seized and took the said goods, wares and merchandize, household stuffs and effects, from and out of the possession of the said George W. Hall and the said Charles C. Hall, and converted and absolutely sold and disposed thereof to his use, as sheriff of the county aforesaid, to the damage of the said Peter Hall of eight hundred dollars, and therefore he brings his suit, &c.

And also for that the said Peter Hall, before and at the time of the committing of the grievances hereinafter mentioned, was by virtue of a certain other indenture of mortgage, duly made, executed and delivered for a good and valuable consideration, which said other indenture the said Peter Hall now bringeth here into court, the date whereof is on the same day and year aforesaid, which said indenture is by and between the said Peter Hall and one George W. Hall, and one Charles C. Hall the owner and proprietor of divers other goods and chattels, to wit, of a large quantity of goods, wares and merchandize, household stuffs and effects, of great value, to wit, of the value of eight hundred dollars, that is to say of two hundred and fifty yards of calico, six pieces of cloth, one barrel of mackerel, ten yards of Swiss muslin, &c.—(enumerating a number of other articles) all and singular of which said goods and chattels were, by virtue of the aforesaid indenture of mortgage, so as aforesaid duly made, executed and delivered, for a good and

valuable consideration, by and between the parties aforesaid, let to the said George W. Hall, and the said Charles C. Hall, for a certain term then to come and unexpired, and the same were there, by virtue of and in accordance with the terms of the said indenture of mortgage, in the possession of the said George W. Hall and the said Charles C. Hall, yet the said Andrew Snowhill, sheriff of the county of Middlesex, as aforesaid, well knowing the premises, but contriving and fraudulently intending to injure, prejudice and aggrieve the said Peter Hall in his reversionary interest and property, in the said goods and chattels, and to deprive him of the benefit and advantage thereof, whilst the said Peter Hall so was the owner and proprietor of the goods and chattels aforesaid, and whilst the same were so let to and in the possession of the said George W. Hall and the said Charles C. Hall, as aforesaid, to wit, on the seventh day of April, in the year of our Lord one thousand eight hundred and thirty-one, at Piscataway, in the township of Piscataway, to wit, at New Brunswick, in the county aforesaid, wrongfully and unjustly, seized and took, by his deputy, James A. Priestly, authorized and empowered under the hand and seal of the said Andrew Snowhill, sheriff as aforesaid, the said goods, wares and merchandize, household stuffs and effects, above mentioned and specified, of the said Peter Hall, from and out of the possession of the said George W. Hall and the said Charles C. Hall, and afterwards, to wit, on the nineteenth day of April, in the year aforesaid, at Piscataway, to wit, at New Brunswick, in the county aforesaid, the said goods, wares, merchandize, household stuffs and effects so as aforesaid wrongfully and unjustly seized and taken by the said James A. Priestly, deputy as aforesaid, the said Andrew Snowhill, sheriff as aforesaid, converted and absolutely sold and disposed of, to his use as sheriff as aforesaid, to the damage of the said Peter Hall of eight hundred dollars, and therefore he brings his suit, &c.

To this declaration the defendant filed a general demurrer in common form. The court of Common Pleas sustained the demurrer and rendered judgment for the defendant. The plaintiff removed this judgment into this court, by writ of error.

*W. H. Lupp* for plaintiff in error.

*W. H. Lupp.* This case presents the question, whether in this

state there may be a conditional bill of sale, and the property remain in the possession of the vendor.

It may be necessary to a full understanding of this subject, to refer to the English statute of frauds, and the cases determined under it.

In the case of *Edwards* v. *Harben*, 2 *T. R.* 587, it was determined, that a conditional bill of sale is not fraudulent. The principle in this case has been narrowed in a later case to be found in 1 *Brod. & Bing.* 506; 5 *Eng. Com. Law Rep.* 167.

The principle recognized in the case, 2 *T. R.* 587, has been adopted in several of the States in this country, and cited 1 *Cranch*, 309; 5 *John. Rep.* 258; 8 *John. Rep.* 446; 19 *John. Rep.* 221; 3 *Cowen Rep.* 166. (The last case from Cowen overrules the case in 9 *John. Rep.*) He cited also, 2 *Pick. Rep.* 607; 3 *ibid* 255; *N. Hamp. Rep.* 18; 1 *North Carolina Rep.* 76. Upon the authority of these cases he contended, that the question of fraud must depend upon the circumstances of the case, as they may be developed during the trial.

The case in 1 *Halst. Rep.* 155, was an absolute bill of sale, and possession of the vendor unexplained.

The case in 7 *Halst. Rep.* 86, does not impugn the general principle contended for. Credit now depends more upon the character of the party than the possession of the chattels.

2. This is the proper style of action, where the plaintiff has only a reversion, and not the right of possession, and cited 1 *Chitty on Plead.* 138.

*Scott* on same side, cited 3 *Cowen Rep.* 189, note 1.

*Wall* for the defendant said, he did not intend to dispute the principle contended for by the counsel for the plaintiff, in regard to the validity of a bill of sale, or mortgage of personal property. He should confine himself to the question arising on the pleadings.

The narration sets forth, that the Halls jointly and severally made a mortgage of the goods, that the goods at the time were in the house of Smith, and that until default in payment, the Halls should retain the possession.

1. By the very terms then of the mortgage, it was only upon

default of payment, that the plaintiff was to have a right to the possession of the goods.   2. The declaration shews, that the complaint against the defendant is for an act done by him as sheriff.   He is sued as sheriff, and must be for some act done or omitted to be done by him as sheriff.   3. By the mortgage it is stipulated, that on default of payment, and after sale, the surplus, if any, is to be paid to the mortgagor.   Is not this a fraud?   Wherever there is a provision in a bill of sale, that the residue of the property is to pass to the mortgagor or vendor, it is void. It is a mortgage assignment, and will place the property of the mortgagor beyond the reach of his creditors.   4. This is a bold experiment.   This mortgage is a mere authority to enter and sell.   On default of payment, the plaintiff was to take the goods, not as owner, but as trustee.   The mortgage conveyed no present interest.   It is dated on the 18th March, 1831, the credit is to the 18th March, 1832, and this action commenced in June, 1831, before the plaintiff's right accrued.   How does it appear, but that the mortgagor may have paid the money in time, and if so, what right had the plaintiff?   Can a case be found, in which a person having a reversionary interest in chattels, can have an action, not for an injury to, but for the sale of the property?   *Mr. Scott* cited, 1 *Chitty on Plead.* 49, and *Mr. Wall* answered, the case just cited refers to the actual owner.   5. It is plain from the first count in the declaration, that the mortgagor has a reversionary interest for one year and an interest in the surplus.   And from the second count, that he had a possessory interest.   The defendant then as sheriff could legally levy on and sell them, and in doing so cannot be liable.

*Scott* in reply.   The *bona fides* of the transaction is distinctly alleged in the declaration.   The demurrer is an admission of this.   The question then is, is a *bona fide* mortgage in such case valid?

A mortgage of personal property is good without possession, and cited, 1 *Powell on mort.* 17, 23, 25, 26, 29; 12 *Mass. Rep.* 54; 1 *Pick.* 389; 5 *Eng. Rep.* 25; *Prac. in Chan.* 297; 3 *Cow.* 181.   He contended, that it does not appear, that the defendant took the goods by virtue of a *fi. fa.*   He ought to have pleaded so, if he meant to set up such a defence.   The declaration charges, that he took, &c. as sheriff, but he might have so taken

Hall *v.* Snowhill.

them by color of his office. The court cannot presume a judgment and a *fi. fa.* The defendant without right to the property cannot question the validity of the bill of sale.

As to the objection, that this action is prematurely brought, he answered, that the grant was in *presenti.* The plaintiff had a vested right in the reversion of the goods, and an interference with that right was an injury. Again admitting the equity of redemption may be levied on, it does not follow, that the sheriff may take the thing itself, but he should levy on the equity of redemption itself.

HORNBLOWER, C. J. This is an action on the case, for taking, carrying away and selling, certain goods and chattels. The declaration contains two counts; the first count sets forth that George W. Hall and Charles C. Hall, being the owners of the goods, &c., and being indebted to the plaintiff, on the 22d March, 1831, executed to the plaintiff an indenture of mortgage of the goods (which are specified in the declaration) to secure to him a debt of nine hundred dollars; that the mortgage contained a condition, that if the mortgagors paid the plaintiff the said debt on or before the 22d day of March, 1832, with interest, the mortgage was to be void, but in case default should be made in such payment, then the mortgagor covenanted with the plaintiff that he and his assigns might enter into the dwelling house or other place in which the said goods might be, and take and sell the same, and out of the proceeds retain the said debt and interest and all charges, rendering the overplus, if any, to the mortgagor, and that by the terms of the said mortgage, until default should be made, the mortgagors should retain the possession of the said goods. That by virtue of the said mortgage, the plaintiff became entitled to a reversionary interest and property in the said goods. That the defendant, as sheriff of the county of Middlesex, knowing the premises, but contriving, &c. to injure the plaintiff in his said reversionary interest and property, and while the said debt remained unpaid, to wit, on the 7th day of April, 1831, took the said goods out of the possession of the said mortgagors, and converted and absolutely sold and disposed of them to his own use, *as sheriff of the county of Middlesex aforesaid.*

The second count alleges that the plaintiff had a certain other

mortgage, given and executed to him by the said G. W. H. and C. C. H. of certain goods, &c. therein specified, for a good and valuable consideration, which goods, &c. were by the said mortgage for a good and valuable consideration let by the plaintiff to the said G. W. H. and C. C. H. for a certain term then to come and unexpired; that the defendant, sheriff as aforesaid, knowing the premises, but contriving, &c. to injure the plaintiff in his reversionary interest and property, &c. and while the plaintiff was such owner and proprietor of said goods, and whilst the same were so let and in possession of the G. W. H. & C. C. H. to wit, on the 7th April, 1831, at &c. by his deputy, James A. Priestly, authorized and empowered under the hand and seal of the said Andrew Snowhill, sheriff as aforesaid, took the said goods, &c. out of the possession of the said G. W. H. and C. C. H. and converted and absolutely sold and disposed of the same to the defendants use as sheriff as aforesaid.

On a general demurrer to this declaration, and a joinder thereto, the court below rendered judgment for the defendant.

Upon the argument of this cause, the counsel for the plaintiff in error discussed very ably and elaborately the question of the validity of a mortgage, or a bill of sale, in the nature of a mortgage of personal property, where the possession remained with the donor. But the court are not called upon in this case to add another to the already almost numberless, and in many instances irreconcileable decisions that have been made by the courts in England and in this country, on the subjects of bills of sale. A mortgage or gift, or bill of sale of chattels, whether accompanied with possession or not, is valid and effectual as between the parties, and against all persons, except creditors. *Mount and al.* v. *Hendricks,* 2 *South. Rep.* 738; *Hawes* v. *Loader, Yelv. Rep.* 196.

Only two questions present themselves upon the pleadings in this cause. 1st. Is the defendant a creditor or was he acting by virtue of an execution in behalf of one? And secondly, Has the plaintiff any such title or interest in the property as to give him a right of action? The answer to the first question, must be in the negative. It is not pretended, that the defendant was a creditor, and the only ground upon which it is attempted to shew that he was acting in virtue of an execution, is, that in the decla-

Hall *v.* Snowhill.

ration the plaintiff has called him sheriff of the county of Middlesex, and alleged, that he took the goods as sheriff, and sold and converted them to his own use as sheriff. But the plaintiff has no where said upon the record, that the sheriff had any process in his hands under or by virtue of which he seized the goods; and consequently the allegation in the declaration amounts to nothing more or less, than that the defendant being in fact sheriff, committed the injury by color of office, which is admitted by the demurrer.

Has then the plaintiff any such title or interest as to give him an action, even against a stranger? It must be admitted that at the time of taking the goods and when this action was commenced, the plaintiff had neither possession or the right of possession, but that he had at least, as between him and the mortgagors, a reversionary interest, contingent, on their paying or not paying the debt intended to be secured. The plaintiff's title to that interest, was an absolute and vested one, but the interest itself was contingent, or rather it was uncertain and contingent, whether he would ever have occasion to assert his right to that interest.

That the owner of a reversionary interest in a chattel, may have an action on the case for an injury done to it, there is no doubt. 1 *Chitty on plead.* 49, *ibid* 138, *ibid* 365; 2 *Chit. plead.* 330, note *r.*

But, in answer to the cases cited by the plaintiff's counsel it was insisted that no one but the general and absolute owner, whose title is complete, and who is at all events to have a return of the property; as the owner of a horse, lent or let for hire, can have such an action. I do not, however, perceive any just ground for such a distinction; nor why a mortgagee, who in the event of non-payment, has a right to the possession of the chattel, may not have an action against a stranger for a tortious injury done to it, whereby his security is lessened or his debt endangered. Courts of equity will interfere and protect the pledge from waste or spoliation, upon the ground, that the security will be impaired; and it is no answer there to say, the right is only contingent—the debt may be, and it is to be presumed, will be paid, and so the mortgagee not be injured. But whether a person having no present interest, but

only a mere contingent reversion or benefit, can have an action at law or not, I apprehend is not the true question in this case. The argument of the defendant's counsel is based on a mistake. His premises are not true; he assumes that the plaintiff's right to have these goods is altogether contingent; whereas I apprehend the contingency is all on the other side. The mortgage is a grant in *presenti*, subject to be defeated on payment of the money intended to be secured. The legal title to these chattels, passed by the mortgage and vested in the plaintiff—the agreement between the parties in reference to the temporary or intermediate possession of the goods, did not alter the substantial rights of the mortgagee.

A mortgagee is the owner of the property at law. 1 *Pow. on mort.* 42, *a Ch.* 2; *Boston Ed. by Rand.* And in the same *Vol. fol.* 31, *in note o.* It is said the "mortgagee, whether in or out of possession, is the legal owner of the ship, and is so considered in a court of law, notwithstanding his title is subject to equitable interests." *Westerdell* v. *Dale*, 7 *T. R.* 306, 312.

And even under the statute of 21 *James* 1, the mortgagee of personal property is considered the *true owner*. *Ryall* v. *Rowles*, 1 *Ves.* 365.

As therefore the legal title to the goods was in the plaintiff, and he had a right to the actual possession and control of them in the event of non-payment of the debt due to him from the mortgagors, and as the defendant, must upon the pleadings as they now stand, be considered a stranger, tortiously taking and converting the goods to his own use, I am of opinion the demurrer ought to have been overruled by the Court of Common Pleas; and therefore that the judgment must be reversed.

FORD, J. An action on the case was brought in the Common Please of Middlesex by Peter Hall, wherein he declared against Andrew Snowhill in substance as follows: that G. & C. Hall being the owners of certain goods and chattels, by their indenture of the 22d of March, 1831, sold and conveyed them to the plaintiff, Peter Hall and his assigns forever; in which indenture they inserted a proviso or condition, that if they should pay the vendee a certain debt of $900 in one year, with interest, that then the indenture and sale should be void; and that the vendors should retain possession of the goods till default in payment

Hall *v.* Snowhill.

and in case default should be made, that then the vendee might enter and take the goods wherever they might be placed, and sell them for the best price he could obtain for them, and out of the money thus arising, retain for the amount of his said debt, interest and charges, and render the overplus, if any, to the vendors, their executors, administrators and assigns ; whereby the plaintiff, Peter Hall, became entitled to a *reversionary interest* in the said goods ; yet the defendant, Andrew Snowhill, *sheriff of Middlesex aforesaid*, well knowing the premises, but intending to aggrieve the plaintiff, Peter Hall, in his *reversionary interest*, on the 7th April, 1831, took those goods out of the possession of the said G. & C. Hall, and sold and disposed of them *to his use as sheriff of the county aforesaid.* The plaintiff in his second count sets out as before the indenture and proviso, and avers that thereby the plaintiff, Peter Hall, *let* those goods to G. & C. Hall, *for a term then to come and unexpired ;* yet the defendant, Andrew Snowhill, *sheriff of Middlesex,* well knowing &c. and intending, &c. on the aforesaid 7th of April (by his deputy, James A. Priestly, authorized and empowered under the hand and seal of the said Andrew Snowhill, sheriff as aforesaid) took those goods out of the possession of the said G. & C. Hall and converted and sold them *to his use as sheriff aforesaid.* The defendant put in to this declaration a general demurrer, on which the court below, after argument, rendered judgment for the defendant, and thereupon the plaintiff below brought a writ of error.

The common pleas undoubtedly meant to decide that general question, which the plaintiff's counsel discussed here at large, whether a bill of sale containing a condition that the vendor shall retain the possession of the goods until he fails to fulfil a condition therein mentioned, is fraudulent and void in law against creditors, or only evidence of fraud to be left to the jury. After this question had agitated Westminster-hall for many years, it was supposed to be settled by the twelve judges in the case of *Edwards* v. *Harben*, 2 *Term Rep.* 587 ; they held that unless possession accompanies and follows the deed, it is void in law against creditors ; but if it contain a condition that the vendee is not to have possession till he performs a certain act, his remaining out of possession till that act is performed, is consistent

with the deed, and does not avoid it. To the same effect is *Hamilton* v. *Russell*, 1 *Cranch* 316, *and Chumar* v. *Wood*, 1 *Halst.* 155, in this court, as far as any opinion was expressed. But so many exceptions have since been received to this rule, that the rule itself has been extensively questioned both in England and the United States. See 2 *Stark. Evid.* 168, *and Bissell* v. *Hopkins*, 3 *Cow.* 166, wherein most of the cases are collected. In *Bedlam* v. *Tucker*, 1 *Pick.* 389, the court say, " It has always been held in this state (Massachusetts) that the possession of the vendor, after a sale, is only *evidence* of fraud, and not such a circumstance as *per se*, necessarily invalidates the deed." Whenever the question shall come fully before the court in this state, it will be time enough to consider whether any definite rule can be adopted except that in Massachusetts. But it does not arise in this case ; for both by the common law, and also by the statute concerning fraudulent conveyances, a bill of sale is always valid between the parties, and void only as against the *vendor's creditors*, whereas this declaration does not shew that G. and C. Hall, the vendors, had or have any other creditor than Peter Hall, the plaintiff. What right has Andrew Snowhill to dispute a bill of sale to which he is no party ? The pleadings neither allege him to be a creditor of the vendors, nor that he seized the goods in virtue of an execution against them. He is said to have done it by his lawful deputy, as sheriff of the county of Middlesex, which is no more than saying that he did it under color of office, in which case he is a *tort-feaser*, unless he had a writ to justify it ; as if under an execution against the goods of A. he seize the goods of B. If he was himself a creditor of G. and C. Hall, or if he acted in right of those who were such, he ought to have shewn it in a plea ; as the case stands upon demurrer, we cannot look out of the declaration in quest of creditors, but must take it that there are none, and of consequence must consider the bill of sale valid as between the parties to it, and as against third persons not injured by it as creditors.

Another objection is however taken to the action, that though the bill purports to convey the goods to the plaintiff, Peter Hall, forever, yet taking the bill and its parts altogether, that it is only a *promise* of the goods as security, not amounting in law

even to a pledge, which can never be without delivery, and therefore that the *title* is not in the plaintiff even in reversion ; or if the former part of the instrument be a conveyance forever, and the subsequent parts, a lease by him to G. & C. Hall for a year, they shew that he is to have *no title* at the expiration of the term, nothing beyond a mere *power of sale*, and it is concluded that without he have a reversionary *title*, the action is not maintainable. What weight these views might have in the case of creditors, need not be now considered, there being none in this case. If the plaintiff had no reversionary *title*, he had a reversionary *interest* in the goods, and for an injury done to it this action lies. The judgment below must consequently be reversed.

Judgment reversed.

*Wall* now moved for leave to amend the record by withdrawing the demurrer and pleading *de novo.*

BY THE COURT. We will permit the amendment, upon the defendant's paying to the plaintiff in error, his costs on the demurrer in the Court of Common Pleas, and his costs in error in this court. The costs in this court are allowed, not on the ground, that the plaintiff in error is entitled to recover costs on the reversal of the judgment, but on the ground, that the defendant comes here to ask a favor of the court to permit him now to amend. On granting this the court will require the payment of the costs sustained by the plaintiff in error, in consequence of this erroneous pleading, which includes as well the costs accruing on the writ of error, brought to reverse that judgment, on this very point, as the costs on the demurrer in the court below ; the payment of which is necessary to put the plaintiff *statu quo.*

CITED in *Hale* v. *Lawrence,* 2 Zab. 83 ; *Runyon* v. *Groshon,* 1 Beas. 88.